UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ALFONSO B.,

              Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.
_____

**DECISION AND ORDER**

6:20-CV-07046 EAW

## INTRODUCTION

Represented by counsel, plaintiff Alfonso B. ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).

Presently before the Court are the parties' cross motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) (Dkt. 9; Dkt. 10) and Plaintiff's reply (Dkt. 11). For the reasons discussed below, the Commissioner's motion (Dkt. 10) is granted and Plaintiff's motion (Dkt. 9) is denied.

## BACKGROUND

Plaintiff protectively filed his application for SSI on December 17, 2018. (Dkt. 8 at 17, 88).[1] In his application, Plaintiff alleged disability beginning July 7, 2017. (*Id.* at 17, 178). Plaintiff's application was initially denied on April 11, 2019, and upon reconsideration on June 14, 2019. (*Id.* at 17, 89-94, 101-12). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Michael Devlin on January 7, 2020. (*Id.* at 35-57). On March 4, 2020, the ALJ issued an unfavorable decision. (*Id.* at 14-33). Plaintiff requested Appeals Council review; his request was denied on November 10, 2020, making the ALJ's determination the Commissioner's final decision. (*Id.* at 5-10). This action followed.

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.  Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of

Regulation No. 4 (the "Listings"). *Id*. § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. § 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since December 17, 2018, the application date. (Dkt. 8 at 19).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: "status-post traumatic brain injury; bipolar disorder; major depressive disorder; unspecified anxiety disorder; and post-traumatic stress disorder ('PTSD')." (*Id.*). The ALJ further found that Plaintiff's right shoulder injuries, mild neurocognitive disorder, personality disorder, substance abuse, and obesity were non-severe. (*Id.* at 19-20).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 21). The ALJ particularly considered the criteria of Listings 11.18, 12.04, 12.05, 12.06, 12.08, and 12.15 in reaching his conclusion. (*Id.* at 21-23).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform a full range of work at all exertional levels with the following non-exertional limitations:

> [Plaintiff] can understand, remember, and carry out simple instructions and tasks; occasionally interact with co-workers and supervisors; have little to no contact with the general public; and is able to consistently maintain concentration and focus for up to two hours at a time.

(*Id.* at 23). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (*Id.* at 27).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of hand packager, routing clerk, and

checker. (*Id.* at 27-28). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 28).

II. **The Commissioner's Determination is Supported by Substantial Evidence and Free from Reversible Error**

Plaintiff asks the Court to reverse the Commissioner's decision and remand for further proceedings, arguing that: (1) the ALJ erred in concluding that Plaintiff had only a moderate limitation in interacting with others[2]; and (2) the ALJ erred in concluding that Plaintiff's right shoulder injuries were non-severe and in failing to include any shoulder-related limitations in the RFC finding. (Dkt. 9-1 at 1). The Court is not persuaded by these arguments, for the reasons discussed below.

A. **Ability to Interact With Others**

"When a claimant alleges a mental impairment, the Commissioner's regulations require the ALJ to apply a 'special technique' at the second and third steps of the five-step evaluation process." *Monica L. v. Comm'r of Soc. Sec.,* No. 1:19-CV-1435 (CJS), 2021 WL 630909, at *3 (W.D.N.Y. Feb. 18, 2021) (citing *Petrie v. Astrue*, 412 F. App'x 401, 408 (2d Cir. 2011)). Initially, the ALJ utilizes the "Paragraph A" criteria "to evaluate the claimant's pertinent symptoms, signs, and laboratory findings and determine whether he or she meets the requirements of one of the mental impairments listed in 20 C.F.R. § Pt.

---

[2] Plaintiff also asserts in a conclusory fashion that the ALJ erred in finding that he had only a mild limitation in adapting or managing oneself. (Dkt. 9-1 at 1, 13). However, Plaintiff has offered no elaboration on that argument, and the ALJ's conclusion is consistent with the opinion of consultative examiner Dr. Stephen Farmer. (*See* Dkt. 8 at 646-47). Accordingly, the Court does not find that the ALJ's opinion was defective on this basis.

404, Subpt. P, App. 1, 12.00." *Id*. If such an impairment is present, "the ALJ must assess the claimant's limitations in the four broad areas of mental functioning that constitute the Paragraph B criteria: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself." *Id*. The ALJ "rate[s] the degree of the claimant's limitation in each of the Paragraph B criteria using a five-point scale: none, mild, moderate, marked, or extreme." *Id*.

In this case, the ALJ applied the special technique at steps two and three and concluded that Plaintiff had: a mild limitation in understanding, remembering, or applying information; a moderate limitation in interacting with others; a moderate limitation in concentrating, persisting. or maintaining pace; and a mild limitation in adapting or managing oneself. (Dkt. 8 at 21-22). As to interacting with others, the ALJ noted that Plaintiff is able to shop, take public transportation, text others, and live with others, and that he testified that he has no issues with coworkers or the public. (*Id*. at 22). The ALJ further noted that the medical evidence "shows that the claimant was generally pleasant or cooperative or had normal speech." (*Id*.). The ALJ further noted elsewhere in the decision that he found persuasive the opinion of consultative examiner Dr. Stephen Farmer, who opined that Plaintiff had a mild to moderate limitation in interacting adequately with supervisors, coworkers, and the public, and the opinion of medical consultants Dr. J. Weitzen and E. Kamin, who also opined that Plaintiff had a moderate limitation in interacting with others. (*Id*. at 25-26).

Plaintiff points to several instances in his medical record where it was noted that he was "agitated, aggressive towards medical staff, and had hospital security called on him"

(Dkt. 9-1 at 14), and argues that the ALJ improperly ignored this evidence. Plaintiff further contends that this evidence conclusively establishes that he had an extreme limitation in interacting with others. (*Id*. at 15). The Court disagrees. The ALJ considered the medical evidence of record, and specifically noted at least one occasion on which Plaintiff was "agitated and aggressive" at a medical examination. (Dkt. 8 at 25). Moreover, the ALJ was correct that there were many occasions on which Plaintiff was calm and cooperative with medical staff. (*See, e.g.,* Dkt. 8 at 271, 278, 280, 284, 477, 511, 732, 739, 745, 747, 751). It is the province of the ALJ to resolved genuine conflicts in the medical evidence, *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002), and "[a]n ALJ need not recite every piece of evidence that contributed to the decision," *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013). There is substantial evidence in the record, including multiple medical opinions, to support the ALJ's conclusion that Plaintiff had a moderate limitation in interacting with others.

Plaintiff's argument that the ALJ was constrained to find that he had an extreme limitation in interacting with others is misplaced. As noted above, multiple medical sources opined that Plaintiff had only a moderate limitation in this regard. Further, Plaintiff's own primary therapist, mental health counselor Michelle Squicciarini, opined that Plaintiff had only a marked—and not extreme—limitation in interacting with others. (Dkt. 8 at 1102). And, as the ALJ correctly noted, Plaintiff himself testified that he had never had any issues getting along with his coworkers or supervisors. (Dkt. 8 at 42). Plaintiff has not established a basis for the Court to disturb the ALJ's determination in this regard.

B. **<u>Shoulder Injuries</u>**

Plaintiff's second and final argument is that the ALJ erred at step two in concluding that his right shoulder injuries were non-severe. At step two of the disability analysis, the ALJ determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). "The following are examples of 'basic work activities': 'walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling . . . seeing, hearing, and speaking . . . [u]nderstanding, carrying out, and remembering simple instructions . . . [u]se of judgment . . . [r]esponding appropriately to supervision, co-workers and usual work situations.'" *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citations omitted).

"The claimant bears the burden of presenting evidence establishing severity." *Id.* Step two's "severity" requirement is *de minimis* and is meant only to screen out the weakest of claims. *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995); *see also McIntyre v. Colvin,* 758 F.3d 146, 151 (2d Cir. 2014) ("[A]n ALJ's decision is not necessarily internally inconsistent when an impairment found to be severe is ultimately found not disabling: the standard for a finding of severity under Step Two of the sequential analysis is *de minimis* and is intended only to screen out the very weakest cases."); *O'Connor v. Saul*, No. 1:18-CV-00740 CJS, 2020 WL 1242408, at *3 (W.D.N.Y. Mar. 16, 2020) ("The standard at step two is quite low."). However, despite this lenient standard, the "'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition 'severe.'" *Taylor*, 32 F. Supp.

- 9 -

3d at 265 (quoting *Coleman v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)). Rather, "to be considered severe, an impairment or combination of impairments must cause 'more than minimal limitations in [a claimant's] ability to perform work-related functions.'" *Windom v. Berryhill*, No. 6:17-cv-06720-MAT, 2018 WL 4960491, at *3 (W.D.N.Y. Oct. 14, 2018) (quoting *Donahue v. Colvin*, No. 6:17-CV-06838(MAT), 2018 WL 2354986, at *5 (W.D.N.Y. May 24, 2018)) (alteration in original). Further, a severe impairment must persist for at least twelve months in order to be disabling. *See* 42 U.S.C. § 423(d)(1)(A) (disability involves impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). "[A]ny error at step two is rendered harmless when the ALJ finds that a claimant has other severe impairments and proceeds through the later steps of the sequential analysis." *Herman S. v. Comm'r of Soc. Sec.*, No. 1:19-CV-00210 EAW, 2022 WL 71618, at *5 (W.D.N.Y. Jan. 3, 2022).

Here, the record shows that Plaintiff dislocated his right shoulder on March 20, 2019, after he punched a wall. (Dkt. 8 at 713-16). He then re-dislocated his shoulder on May 15, 2019, and was discharged with a right arm shoulder immobilizer in place. (*Id*. at 770). On June 5, 2019, Plaintiff reported to the emergency department with complaints of right shoulder pain sustained while boxing. (*Id*. at 928). Plaintiff was assessed as having again dislocated his right shoulder. (*Id*. at 931). Plaintiff again dislocated his shoulder while fighting on August 13, 2019, and was placed in a splint. (*Id*. at 940, 944).

On September 27, 2019, Plaintiff reported to the emergency department and indicated that he had thrown a punch and thought his shoulder had "popped out." (*Id*. at

952).  On October 7, 2019, he again returned to the emergency department complaining of shoulder pain, but he left before his work up was completed.  (*Id*. at 1047).  Plaintiff was asked if he had followed up with orthopedics and stated that he had not because it was too far from his house.  (*Id*. at 1058).  Plaintiff reported to the emergency room on October 26, 2019, having again dislocated his shoulder, but had no obvious deformity of his right shoulder.  (*Id*. at 1033).  An x-ray taken on this date showed an anterior dislocation, but no acute fracture or destructive osseous lesion.  (*Id*. at 1037).

On October 29, 2019, Plaintiff reported to the emergency room and indicated that he had fallen and dislocated his right shoulder.  (*Id*. at 1014).  He further reported that he had dislocated his shoulder several times earlier in the week but had been able to return it into place.  (*Id*.).  Plaintiff had right shoulder pain and decreased range of motion.  (*Id*. at 1016).  Plaintiff was noted to be noncompliant with his sling.  (*Id*. at 1014).  Shoulder x-rays showed that Plaintiff's shoulder had been correctly reduced.  (*Id*. at 1019).  He was advised on the importance of wearing his shoulder immobilizer.  (*Id*.).

The ALJ concluded that these repeated shoulder injuries were non-severe, explaining that: (1) they were generally short in duration; (2) they were generally precipitated by activities such as fighting, boxing, or falling; (3) Plaintiff was non-compliant with his sling; (4) Plaintiff would not always allow for a complete workup of his condition; and (5) Plaintiff did not follow up with orthopedics because it was too far from his home.  (*Id*. at 19-20).  The ALJ also stated that, "[e]xamination of [Plaintiff] since October 26, 2019 noted that [Plaintiff] was able to move his extremities equally, had no cranial nerve deficits, and revealed normal range of motion with no obvious deformity of

the right shoulder." (*Id*. at 20). The use of the word "since" made this a partially erroneous statement by the ALJ. In particular, as noted above, on October 29, 2019, Plaintiff did have a reduced range of motion and deformity in his right shoulder before his dislocation was treated. However, the ALJ was correct that at an examination on October 26, 2019, no deformity of the right shoulder was observed, and Plaintiff had a normal range of motion and no cranial nerve deficits. (*Id*. at 1033). The Court does not view this minor factual inaccuracy as undermining the ALJ's analysis of the severity of Plaintiff's shoulder injuries. *See McCluskey v. Berryhill*, No. 2:16-CV-3471 (DRH), 2018 WL 4109388, at *13 (E.D.N.Y. Aug. 29, 2018) (finding ALJ's conclusion supported by substantial evidence "[n]otwithstanding [a] few arguable factual errors").

   The Court further finds that substantial evidence supports the ALJ's conclusion that Plaintiff's shoulder injuries were non-severe. In particular, as the ALJ correctly noted, the evidence of record shows that Plaintiff's repeated shoulder dislocations caused no lasting damage and could be swiftly managed if and when Plaintiff allowed for an appropriate work-up. (*See, e.g.,* Dkt. 8 at 1082 (Plaintiff's range of motion "largely improved" immediately upon performance of shoulder reduction and he was stable for discharge without any need for additional treatment less than 30 minutes later); 1088 (re-dislocation of shoulder noted to have been caused by Plaintiff having "refused to wear should[er] immobilizer"), 1304 (x-ray taken on November 20, 2019, showed no evidence of fracture or dislocation, and all visualized portions of lungs, ribs, and cardiomediastinal silhouette were unremarkable); *cf. id*. at 1064 (describing Plaintiff as a "[c]hronic dislocator" with "no significant trauma" and "significant noncompliant with treatment plans")). "Treatable

conditions that impose only negligible constraints on daily activity . . . fail to rise to the level of severe impairments." *Padilla v. Colvin*, No. 10 CIV. 4762 CM FM, 2013 WL 4125039, at *12 (S.D.N.Y. Aug. 15, 2013).

The ALJ also did not, as Plaintiff argues, conflate the severity standard with the duration requirement and improperly find the shoulder injuries non-severe on that basis. Instead, the ALJ appropriately considered the short duration of each of Plaintiff's individual shoulder dislocations as one factor in assessing the impact they would have on his "ability to meet the basic demands of work activity." (Dkt. 8 at 19-20).

Moreover, assuming *arguendo* that the ALJ erred in finding Plaintiff's shoulder injuries non-severe at step two, the Court finds that such error was harmless. As noted above, "any error at step two is rendered harmless when the ALJ finds that a claimant has other severe impairments and proceeds through the later steps of the sequential analysis." *Herman S.*, 2022 WL 71618, at *5. In this case, the ALJ found severe impairments at step two and continued with the analysis. Further, and contrary to Plaintiff's assertion that the ALJ did not "include a discussion in the RFC analysis as to why no [physical] limitations [were] included," the ALJ explained that he found persuasive the opinions of medical consultants Dr. S. Padmaraju and Dr. A. Periakaruppan, who opined in April and June of 2019, respectively, that Plaintiff's "physical conditions do not severely limit his activities of daily living," (Dkt. 8 at 26). Dr. Periakaruppan explicitly considered the records of Plaintiff's shoulder dislocation occurring May 15, 2019, in reaching this conclusion. (*Id.* at 79).

Plaintiff asserts that the ALJ should not have relied on Dr. Periakaruppan's opinion because Dr. Periakaruppan "only had records on Plaintiff's initial shoulder dislocation to consider." (Dkt. 9-1 at 21). This is incorrect as a factual matter. Plaintiff experienced a shoulder dislocation on March 20, 2019. (Dkt. 8 at 713-14). The dislocation on May 15, 2019, was thus not the initial shoulder dislocation, and the records thereof expressly state that Plaintiff "has had past shoulder dislocations, last of which was 2 mo[n]ths ago." (*Id*. at 764). Accordingly, Dr. Periakaruppan was aware that Plaintiff had experienced multiple dislocations when assessing Plaintiff's physical limitations. Moreover, Plaintiff has not pointed to any evidence supporting the conclusion that his subsequent shoulder dislocations caused limitations beyond those caused by the initial dislocation. To the contrary and as previously noted, an x-ray of his right shoulder taken on November 20, 2019—after the subsequent dislocations—was completely normal. (Dkt. 8 at 1304). The Court accordingly disagrees that Dr. Periakaruppan's opinion could not serve as substantial evidence for the ALJ's RFC finding. *See Laura D. v. Comm'r of Soc. Sec.*, No. 5:21-CV-445 LEK TWD, 2022 WL 4181570, at *11 (N.D.N.Y. Sept. 13, 2022) ("The courts have long recognized an ALJ has discretion to rely on a non-examining medical consultant's opinion.").

In sum, the Court finds no reversible error in the ALJ's step two consideration of Plaintiff's shoulder injuries. Accordingly, there is no basis for the Court to disturb the Commissioner's determination.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 10) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 9) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:   September 26, 2022
         Rochester, New York